# ANTHONY L. RICCO
*Attorney At Law*
20 VESEY STREET, SUITE 400
NEW YORK, NEW YORK 10007

TEL. (212) 791-3919   FAX. (212) 791-3940

November 17, 2007

**BY E.C.F.**

Hon. Kenneth M. Karas
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

    Re:    **United States v. Jason Watler**
           Docket No.  S4 05 Cr 1067 (KMK)

Dear Judge Karas:

    This letter is written pursuant to Rule 32(f) of the Federal Rules of Criminal Procedure, it sets forth Jason Watler's objections to the Presentence Report and his sentencing recommendation.  Jason Watler requests that the court sentence him pursuant to the plea agreement in this case and grant an additional one point reduction to his total offense level, or in the alternative to impose a non-Guidelines sentence pursuant to the court's authority under <u>United States v. Crosby</u>, 397 F.3d 103 (2d Cir. 2005) and 18 U.S.C.§ 3553.[1]

### I.  Background/Guilty Plea

    On March 19, 2007, Jason Watler pled guilty before this court, pursuant to a plea agreement, to counts 1 & 13 of the superseding indictment.  Count 1 of the indictment charged conspiracy to commit bank fraud in violation of 18 U.S.C. § 1344 and count 13 charged conspiracy to commit money laundering in violation of 18 U.S.C. § 1956(h).  According to the government's theory the conspiracy existed from 2002 to 2005, a period of approximately three (3) years.  However, the conduct of Jason Watler is limited to events related to his personal check account which took place between March 2005 and May 5, 2005.

---

    [1] The defendant recognizes that the court can reach the lowest guideline range permitted by the plea agreement (12 to 18 months) by either granting him a one level reduction or in the alternative by imposing a 3553(a) sentence. However, under no circumstances is the defendant seeking a sentence, or suggesting that the court impose a sentence, less than 12 months as per his agreement.  See, *Plea Agreement*, page 4.

1.  The Plea Agreement

In this case the Plea Agreement set forth a stipulated guideline range which is binding on the defendant. The Plea Agreement set the base offense level for count one at 7, pursuant to Guideline § 2X1.1(a) and § 2B1.1(a)(1). Since the offense involved a loss of more than $120,000 but less than $200,000, pursuant to Guidelines § 2B1.1(b)(1)(F), the base offense level is increased 10 levels. The base offense level for count 13, the money laundering offense, pursuant to Guidelines § 2S1.1(b)(2)(B) is 19.[2] The highest offense level applicable to the grouped offenses is that related to the money laundering conspiracy, which is 19.

The Plea Agreement acknowledged that Jason Watler was a minor participant in the criminal activity and that his role in the offense warrants a two (2) level downward adjustment.

Since Jason Watler accepted responsibility for the offense and since he gave timely notice of his intention to plead guilty, the offense level is reduced three (3) levels pursuant to 3E1.1(a) and (b). Therefore, the adjusted offense level is 14.

Jason Watler has no criminal history points, therefore the parties stipulated that Criminal History Category I applies, yielding a Guidelines sentencing range of 15 to 21 months.

Finally, based upon extensive negotiations with the government, Jason Watler was permitted, as a part of his agreement, the reservation of the right to seek a limited one level reduction or downward departure from the above guideline range. In the event, that the court grants the requested one level reduction, Jason Watler's offense level will be 13, with a guideline sentencing range of 12 to 18 months.

1.  The Presentence Investigation Report

The findings of the Presentence Investigation Report, ("P.S.R."), are consistent with the factual findings and stipulated guideline ranges of the parties which resulted in a total offense level of 14, along with a finding that Criminal History Category I applies. See, P.S.R., ¶ 133, ¶ 136 & ¶ 171.

In addition, the P.S.R. acknowledged that the parties agreed that Jason Watler would be permitted to argue for a limited one level reduction on the grounds of aberrant behavior. See, P.S.R., ¶ 11(p) & ¶ 189.

---

[2]   Counts 1 & 13 are grouped together, under Guidelines § 3D1.2[c], since the two counts charged, money laundering and bank fraud, are closely related; the bank fraud activity was designed to conceal the nature and true source of the unlawful thefts.

2.   Statutory Sentences

The statutory mandatory minimum sentence under count one, a violation of 18 U.S.C. § 1344 and 1349, is a maximum sentence of 30 years. A conviction under the statute also carries a maximum period of five (5) years supervised release, a fine up to $1,000,000.00, along with a mandatory special assessment of $100.00.

The statutory mandatory minimum sentence under count one, a violation of 18 U.S.C. § 1956, is a maximum sentence of 20 years. A conviction under the statute also carries a maximum period of three (3) years supervised release, a fine up to $500,000.00, along with a mandatory special assessment of $100.00.

## II.  Sentencing Recommendation

Although the sentencing guidelines are no longer mandatory, the court is nevertheless required to consider the Guidelines range and render a guideline analysis before making its ultimate sentencing determination. See, *United States v. Booker*, 534 U.S. 220, 245-246 (2005).

In this case, Jason Watler requests that the court adopt the stipulated guideline range set forth in the plea agreement. In addition, for the reasons set forth below, Jason Watler requests that the court grant a limited one level reduction, so that he may be sentenced to 12 months and one day for his conduct in connection with this case.

1.   Background, History & Experience of the Defendant

The background, history and experiences of the defendant in this case warrants a limited one level reduction of his offense level.

Although the stipulated guidelines account for Jason Watler's early acceptance of responsibility (Guidelines § 3E1.1(a)(b)), and his minor role in the offense (Guidelines § 3B1.2 ), the guidelines do not adequately account for the character and background of the defendant (as reflected in his extraordinary employment history, the aberrant nature of his involvement in the present offense and his willingness to cooperate with the government's investigation).

Moreover, and perhaps more significantly, the stipulated guideline range simply does not fully account for the otherwise good character of an extremely hard working young man, who, when confronted with a character building moment, made the wrong choice, thereby putting his life progress in jeopardy.

A.   Background, Family & Circumstances of The Offense

This case involves a national mutli-million dollar check fraud scheme, involving accountants and celebrated Olympic Athletes who used their fame to perpetuate a massive check scheme

3

which resulted in those individuals pocketing millions of dollars in illegal proceeds. Several of the defendants charged in this case, are highly educated, repeat offenders, who utilized their education to devise a sophisticated scheme of theft.

The leaders of the conspiracy unlawfully obtained corporate checks and located individuals all around the country to deposit those checks into their accounts. Once the checks cleared, the proceeds were withdrawn and through the process of transfers involving various middlemen, the proceeds would end up in the hands of the leaders. Jason Watler is an individual who was recruited into this scheme by a close family friend Tobye Bennett, to use his individual checking account for the deposit of the unlawful checks.

As the court is aware, from a review of the P.S.R., Jason Watler is 27 year old African American male, who prior to the charged offense, had absolutely no contact whatsoever with the criminal justice system.

In exchange for a few thousand dollars, Jason Watler permitted his legitimate checking account to be used to deposit and ultimate launder the proceeds of fraudulent checks. Jason Watler was recruited because he had no prior involvement and it was thought that, since had bona fide employment and bank history, the checks would clear without raising the suspicion of bank officials. Jason Watler permitted two checks to be deposited into his account for these purposes. Jason Watler was fully aware that he was being asked to engage in an unlawful transaction and did so, being assured by his cousin that he could obtain "quick and easy" money. As stated above, prior to this offense, Jason Watler had no contact with the criminal justice system and was gainfully employed.

As stated in the P.S.R., although Jason Watler's parents were married when he was born, his father was an alcoholic who did not provide him with any supervision or direction. Jason Watler, however, has a strong relationship with his mother Mrs. Loretta Watler, presently 64 years old.

Mrs. Watler has a close loving relationship with both Jason and her daughter Jennifer Watler, presently age 35. Mrs. Watler immigrated to the United States from Panama and has maintained continuous employment since she arrived here over 40 years ago.

Mrs. Watler who has been employed by New York University for many years as a security officer, is also a deeply religious woman who has worked extremely hard to instill the values of hard work and faith in God to her children.

Throughout these proceedings, with the exception of the entry of the guilty plea, Mrs. Watler has attended every court conference and meeting at my office. Although Jason Watler is an adult, his mother has taken an active, interested role in the case and has provided Jason Watler with strong moral advise and guidance throughout the court proceedings. That moral support

4

had a direct influence of Jason Watler's decision to plead guilty.

B.   Education & Employment History

Jason Watler is a 1999 graduate of Bishop Ford Central Catholic High School in Brooklyn, New York. See, P.S.R., ¶ 158. Although Jason Watler was not a top student, he persevered and continued, where many others would have given up. While at Bishop Ford Central Catholic High School, Jason Watler excelled as one of the stars on the school's track team.

Throughout his life as a young adult, Jason Watler has maintained a positive employment history. During his High School years, Jason's mother got him a part time job at New York University, where, as stated above, she has been employed for many years as a security officer. Jason was employed as a part-time audio technician, during the summer months and holidays.

After high school, Jason Watler continued at New York University until he was hired by Time Warner Cable in 2001. Jason Watler remained at Time Warner Cable until 2004, when a sports injury prevented him from keeping up with the physical demands of his employment.

After a four month recovery period, Jason Watler was employed as an elevator helper/technician for Rotavele Elevator, Inc., Brooklyn, New York. Jason Watler remained employed at Rotavele Elevator from 2004 through February 2006, when he was arrested in this case and asked to resign. See, P.S.R., ¶ 159.

After his arrest, Jason Watler obtained a job as a cable television installer/technician for Midtown Express, Inc., in New York City, where he has remained gainfully employed to this day.

Jason Watler made a positive transition from his teen years to a young adult. As observed by the Probation Officer, although not married, Jason Watler has maintained his own modest apartment on Staten Island (Formerly the apartment of his mother). See, P.S.R., ¶ 144, 145. Jason Watler drives a late model 2002 Mercury Sable, that he also purchased from his mother. See, P.S.R., ¶ Footnote 5, page 30. Jason Watler has his own bank account and has also paid his taxes during his young adult working years. See, P.S.R., ¶ 166.

By all accounts, it appears that the values of hard work that his mother struggled to instill in him were taking root, as Jason Watler was making a positive adjustment to his young adult life. However, in the spring of 2005, Jason Watler made a decision that changed the course of his life. Based upon a scheme presented to him by his cousin Tobye, Jason Watler involved himself in serious criminal conduct, by permitting his personal checking account and good reputation at the bank to be used to further Tobye Bennett's fraudulent checking scheme. In exchange for a few thousand dollars, Jason Watler threw away the good will and reputation he built up in his young adult life.

5

Upon his arrest, Jason Watler faced the prospect of conviction of a number of federal offenses, substantial jail time and at least $140,000.00 in restitution.

C.   Post Arrest Conduct

Early on in the case, Jason Watler decided to enter a guilty plea and pursued a plea/cooperation agreement with the government. Jason Walter accepted responsibility and acknowledged his involvement in the charged offense. Jason Watler attended several proffer session with myself and A.U.S.A. Dana Perry. However, due to Jason Watler's limited role in the offense and the manner in which the leaders of the scheme protected themselves from detection, Jason was not capable of providing substantial assistance to the government in it's investigation or prosecution of the leaders of the scheme.

The government, however, seemed satisfied that Jason Watler was honest and forthright in his proffer sessions. The information provided by him, however, had limited value and therefore the government could not, in good faith, offer him a cooperation agreement, which required a finding of substantial assistance. Jason Watler, however, did make a sincere and concerted effort to accept responsibility and assist the government in it's investigation and prosecution.

### III.   Limited Downward Departure

1.   Downward Departure

Under the sentencing guidelines, the court has the discretion to depart from the guidelines and impose a sentence outside the guideline range, if the court finds that there exists an aggravating or mitigating circumstances: 1) of a kind not adequately considered by the Sentencing Commission; Guideline § 5K2.0(a)(1); 2) to a degree not adequately considered; Guideline § 5K2.0(a)(1); and 3) "not ordinarily relevant" in determing whether or not to depart. See, Guideline § 5K2.0(a)(4).

The sentencing commission intended the sentencing courts to treat each guideline as carving out a "heartland," a set of typical cases embodying the conduct that each guideline describes. When the court finds an atypical case, one to which a particular guideline linguistically applies but where conduct significantly differs from the norm, the court may consider whether a departure is warranted. See, *Koon v. United States*, 116 S. Ct. 2035 (1996).

2.   Combination of Factors

The Second Circuit long ago upheld the view that a "confluence of circumstances," none of which standing alone may have warranted departure, may combine to create an unusual situation not contemplated by the Commission and provide a proper basis for a downward departure. *United States v. Broderson*, 67

F.3d 452, 458-59 (2d Cir. 1995); *United States v. Rioux,* 97 F.3d 648, 663 (2d Cir. 1996).

The 2003 amendment to the guidelines pursuant to the PROTECT Act provides that departures based upon a combination of offender characteristics and other circumstances, none standing alone sufficient, are permissible when: 1) each characteristic or circumstance is present "to a substantial degree;" 2) each characteristic or circumstance is identified in the guidelines as a permissible ground for departure; and 3) the combination of factors "make[s] the case an exceptional one." See, Guideline § 5K2.0[c].

Here, the presence of a combination of factors, which includes 1) aberrant behavior; along with 2) his long standing employment history, comprise a combination of factors which make his case sufficiently compelling to warrant a modest one level downward departure in this case.

A.  <u>Aberrant Behavior</u>

The presence of aberrant behavior is sufficiency present in this case, standing alone, to warrant a downward departure.

Under Guideline § 5K2.20 a sentence below the applicable guideline range is permitted where the offender's criminal conduct constitutes aberrant behavior. An offender is eligible for a downward departure under Guideline 5K2.20, unless 1) the offense involved serious bodily injury or death; 2) a firearm was discharged or otherwise used; 3) a serious drug trafficking offense was involved; 4) offender has more than one criminal history point; or 5) offender has a prior federal or state felony conviction. Jason Watler is clearly an eligible offender, since none of the Guideline exclusionary factors are applicable to his offense, his conduct or criminal history.

In deciding whether to grant an eligible offender a downward departure under the "aberrant behavior" guideline, the court must look to the totality of circumstances to determine whether the conduct considered is truly aberrant. *Zecevic v. United States Parole Commission*, 163 F.3d 731, 735-736 (2d Cir. 1998). In assessing the "aberrant behavior" the district court may consider:

> (1) the singular nature of the criminal act; (2) the defendant's criminal record; (3) the degree of spontaneity and planning inherent in the conduct; (4) extreme pressures acting on the defendant, including any psychological disorders from which he may have been suffering, at the time of the offense; (5) the defendant's motivations for committing the crime, including any pecuniary gain he derived therefrom; and (6) his efforts to mitigate the effects of the crime.

7

*Zecevic v. United States Parole Commission*, 163 F.3d at 736. The foregoing list is non-exclusive. In addition, no single factor shall serve to disqualify an eligible offender from receiving the departure. *Id.* See also *United States v. Martinez*, 207 F.3d 133, 137 (2d Cir. 2000).

1. <u>Singular Nature of the Criminal Act</u>

As stated above, Jason Watler, is a 27 year old graduate of Bishop Ford Central Catholic High School, who, prior to this case, was never arrested for a criminal act. In his young adult life, Jason Watler, has managed to avoid the circumstances that lead many inner city you into the trappings of the "street life. Instead, after graduation he obtained stable employment, which he has maintained to date. Jason Watler also does not have any history of drug usage. In the context of Jason Watler's law-abiding life, his participation in the present offense was greatly out of his character.

2. <u>The Defendant's Criminal Record</u>

The defendant has no criminal record.

3. <u>The Degree of Spontaneity & Planning Inherent in the Conduct</u>

Although the charged offense is the result of a sophisticated fraudulent scheme, well beyond the capabilities of Jason Watler, Jason Watler's involvement was a very much a spontaneous response to the urging and influence of his cousin, who has a lengthy criminal record. Tobye Bennett sought out Jason, because of Jason's overall good conduct and due to the fact that Jason was a working man, with a valuable asset; a viable checking account - not connected to the leaders of the conspiracy. Tobye Bennett's influence, along with Jason's greed, triggered the acts of an otherwise decent, hard- working, law-abiding young man. See, *United States v. Castellanos*, 355 F.3d 56, 59 (2d Cir. 2003), "absence or presence of sponataniety alone never determines whether criminal conduct is aberrant behavior."

4. <u>Extreme Pressure</u>

Although Jason Watler was not under any extreme psychological pressures, at the time he engaged in the criminal conduct, as set forth above, he was influenced by a person viewed by him as a close family member.

5. <u>Motivation For Committing The Crime</u>

The motivation for the commission of the offense was pecuniary gain.

6. <u>Efforts To Mitigate The Effects Of The Crime</u>

After his arrest in this case, Jason Watler attempted to assist the government with it's investigation and prosecution of the case. Unfortunately, due to the sophisticated manner in

8

which the offense was structured, Jason Watler, a minor participant, had limited knowledge of the significant participants and the operation of the scheme.

Jason Watler is a candidate for a downward departure based on aberrant behavior, since he falls into that narrow category of defendants for whom the aberrant behavior departure was designed. While the foregoing is not exhaustive of the factors for the court to consider, Jason Watler is an ideal candidate for a departure because he significantly satisfies most of the enumerated factors.

B.  Offender Characteristic: Employment History

Prior to an amendment to the guidelines resulting from the PROTECT Act, a downward departure was permitted but only in relatively few instances. See, *States v. Jagmohan, 909 F.2d 61 (2d Cir. 1990)*; Guideline § 5H1.5 [Employment History]. However, the sentencing commission eliminated this ground for departure, in amendments promulgated at the direction of the 2003 PROTECT Act.

As set forth in detail above, throughout Jason Watler's young adult life he has been gainfully and successfully employed, from 1998 to date. He accomplished this with his High School degree. Over the years that many of us have practiced before our courts it is apparent that Jason Watler is truly an exceptional defendant with an extraordinary employment history. Abandoned by his father, a marginal student in school, Jason Watler preserved. He avoided drugs and the lure of the drug culture, found employment and was beginning to make a positive life for himself.

Here Jason Watler's employment history, standing alone, may not provide a basis for a downward departure, and is now prohibited by the guidelines. However, when viewed along with his request for an "aberrant behavior" departure, these complete circumstances combine, in the context of this case, to warrant a modest one level downward departure.

**IV.  Imposition of a Non-Guidelines Sentence**

In the post-*Booker* era, a sentencing court may impose a sentence other than that recommended by the Guidelines if, in its discretion, the sentencing find that the statutory regime of 18 U.S.C.§ 3553(a) warrants such a sentence. *United States v. Crosby*, 397 F.3d 103 (2d Cir. 2005).

As stated above, the defendant requests that the court impose a sentence in the stipulated range, as set forth in the plea agreement. In the event, that the court finds that the aberrant behavior of Jason Watler either standing alone, or combined with his employment history, is not sufficiently present to warrant a downward departure, the defendant requests that the court consider imposing a sentence in the 12 to 18 month range based upon the same information in the context of the factors set

forth in 18 U.S.C. § 3553(a), where both factors can be given full consideration.

In the pre-<u>Booker</u> era, sentencing within the applicable guideline range was mandated under 18 U.S.C. § 3553 (b), unless the sentencing court found the existence of an aggravating or mitigating circumstance of a kind, or to a degree, not adequately considered by the Sentencing Commission in the formulation of the applicable guideline. See, *Koon v. United States*, 518 U.S. 81, 92-93 (1996)(citing 18 U.S.C. § 3553(b)). Over the years this rule was strictly enforced upon the district courts. See, e.g., *United States v. Bonnet-Grullon*, 212 F.3d 692, 700 (2d Cir. 2000); *United States v. Koczuk*, 252 F.3d 91, 98 (2d Cir. 2001).

However, by finding 18 U.S.C. § 3553(b) unconstitutional and excising it, the Supreme Court also eliminated the empowering statutory provision which necessitated the finding of a departure as the only basis upon which to sentence a defendant outside of an applicable sentencing range. When the Supreme Court excised the mandatory application of the federal sentencing guidelines, it also eliminated the concept and the necessity of finding a departure to avoid the mandatory application of the federal sentencing guidelines.

Title, 18 U.S.C. § 3553(a) requires the court to "impose a sentence sufficient, but not greater than necessary," to afford adequate deterrence to criminal conduct and to protect the public from further crimes of the defendant, *inter alia*. The ultimate goal of the sentencing court is to find just punishment by carefully balancing important public policy consideration along with the prophylactic and rehabilitative objectives of 18 U.S.C. § 3553(a).

In the absence of the mandatory provisions which resulted in the mechanical adherence to the sentencing guidelines:

> No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing a sentence.

See, 18 U.S.C. § 3661. In this case, were this court to consider the "nature and circumstances of the offense and the history and characteristics of the defendant," along with the other factors in 18 U.S.C. § 3553(a), a sentence of 12 months and one day, is sufficient, but not greater than necessary," to afford adequate deterrence to criminal conduct and to protect the public from further crimes of Jason Watler.

### V. Conclusion

For the reasons set forth above, the defendant requests that the court adopt the guideline set forth in the plea agreement and also grant him a downward departure of one level and sentence him to 12 months and one day. In the alternative, the defendant

requests that the court impose a non-guidelines since of 12 months and one day, pursuant to 18 U.S.C. § 3553(a).

        Respectfully,

        /s/ *Anthony L. Ricco*
        Anthony L. Ricco

ALR/es
cc:  A.U.S.A. Danya Perry (ECF & Email)